IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, acting in its capacity as liquidating agent for St. Paul Croatian Federal Credit Union, 4807 Spicewood Springs Road, Suite 5100 Austin, Texas 78759-8490, | CASE NO. |
| Plaintiff, | JUDGE |
| v. | |
| ZDENKO ZOVKIC, 30 Hemlock Lane Moreland Hills, OH 44022 | |
| and | |
| SCENE RESTAURANTS, INC. dba XO Prime Steaks Restaurant c/o statutory agent, Zdenko Zovkic 500 W. St. Clair Avenue Cleveland, OH 44113 | **COMPLAINT** |
| and | |
| ZMIN, LLC dba Fortress Nightclub c/o statutory agent, Zdenko Zovkic 26535 Chardon Road Cleveland, Ohio 44143 | |
| and | |
| C.C. RESTAURANTS, INC. dba Seasons Restaurant c/o statutory agent, Zdenko Zovkic 1419 West Ninth Street #200 Cleveland, Ohio 44113 | |
| Defendants. | |

Now comes Plaintiff, National Credit Union Administration Board, acting in its capacity as Liquidating Agent for St. Paul Croatian Federal Credit Union (the "Liquidating Agent"), and for its Complaint states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. The National Credit Union Administration (the "NCUA") is an independent agency of the executive branch of the United States Government that charters and insures federal credit unions. The NCUA is managed by the National Credit Union Administration Board (the "NCUA Board") pursuant to 12 U.S.C. § 1752a(a).

2. At all times relevant herein, St. Paul Croatian Federal Credit Union ("St. Paul") was a federally chartered and insured credit union with its principal place of business located at 34900 Lake Shore Blvd., Eastlake, Ohio 44095. As a federal credit union, St. Paul was a cooperative financial institution in that its account holders owned shares of the credit union and were, therefore, the owners or "members" of the credit union. At the times relevant to the within matter, St. Paul was not permitted to issue business loans, but did issue "share-secured" personal and consumer loans to its members. Share-secured meant that the particular borrower pledged funds on deposit with St. Paul that matched or exceeded the loan amount.

3. On or about April 30, 2010 (the "Liquidation Date"), the NCUA Board placed St. Paul into involuntary liquidation and appointed itself as the Liquidating Agent of St. Paul pursuant to the applicable provisions of 12 U.S.C. § 1787(a)(1)(A). By operation of law, the Liquidating Agent succeeded to all rights, title, powers, and interests of St. Paul. A true and authentic copy of the Notice of Involuntary Liquidation and Revocation of Charter is attached hereto and incorporated herein by reference as <u>Exhibit A</u>.

4. Upon information and belief, Defendant Zdenko Zovkic ("Zovkic") is an individual residing in Cuyahoga County, Ohio whose last known address is as stated in the caption of this Complaint. At times, with respect to Zovkic's relationship with St. Paul, Zovkic maintained accounts and obtained loans in his individual name.

5. Upon information and belief, Defendant Scene Restaurants, Inc. ("Scene") is a duly organized and existing corporation under the laws of the State of Ohio, principally located at 1360 West 9th St., Cleveland, Ohio 44143, and whose statutory agent is listed as Zdenko Zovkic.

6. Upon information and belief, Defendant Scene does business as XO Prime Steaks ("XO").

7. Upon information and belief, Defendant Zmin, LLC ("Zmin") is a duly organized and existing limited liability company under the laws of the State of Ohio, principally located at 1360 West 9th St., Cleveland, Ohio 44143, and whose statutory agent is listed as Zdenko Zovkic.

8. Upon information and belief, Defendant Zmin does business as Fortress Nightclub ("Fortress").

9. Upon information and belief, Defendant C.C. Restaurants, Inc. ("C.C.") is a duly organized and existing corporation under the laws of the State of Ohio, principally located at 1360 West 9th St., Cleveland, Ohio 44143, and whose statutory agent is listed as Zdenko Zovkic.

10. Upon information and belief, Defendant C.C. conducted business as Seasons ("Seasons"), a restaurant which was located in Bratenahl, Ohio but is now closed.

11. Upon information and belief, Defendant Zovkic obtained loans from St. Paul for his personal use and for the use of Defendants XO, Fortress, and Seasons (hereinafter Defendants Zovkic, XO, Fortress, and Seasons will be referred to collectively as "Defendants").

12. This Court has jurisdiction over this matter in accordance with 28 U.S.C. §§ 1331 and 1345, as the Liquidating Agent's claims in this case arise under the laws of the United States including, without limitation, the Federal Credit Union Act ("FCUA") as codified at 12 U.S.C. § 1751 *et seq*.

13. According to 12 U.S.C. § 1789(a)(2), "[a]ll suits of a civil nature at common law or in equity to which the [NCUA] Board shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy."

14. Venue in this judicial district is proper under 28 U.S.C. § 1391(b), as all Defendants are residents of this district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## Count 1 – Fraud

15. The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

16. Zovkic made material misrepresentations and/or omissions of fact in connection with a multitude of loans obtained from St. Paul. These misrepresentations involved incomplete, false, and misleading information concerning the creditworthiness of individual applicants; the true recipients and/or beneficiaries of the loan funds; and the purpose of the loan funds. These misrepresentations and/or omissions were intended to disguise the true nature of the loan

transactions. Moreover, all loans were premised on the representation that Zovkic would repay the money obtained and/or maintain sufficient funds in his share account to fully collateralize the loan.

17. When not intentionally omitting information, Zovkic knew the information provided was false when it was provided to St. Paul, or submitted this information recklessly, without knowledge of its truth and as a positive assertion.

18. The misrepresentations were made with the intention to induce reliance by St. Paul to fund the above-described loan transactions, including those "share-secured" loans made to Zovkic.

19. Specifically, upon information and belief, the loan transactions described in this Complaint funded Zovkic's business ventures since 2001.

20. Zovkic is the former owner of an upscale restaurant located in Bratenahl called "Seasons." Upon information and belief, Seasons was funded by loan proceeds received from St. Paul. On September 13, 2001, Zovkic received a loan from St. Paul in the amount $127,500.00 evidenced by account 82165-51. Of the $127,500.00, Zovkic received $125,000.00, and upon information and belief, the remaining $2,500.00 was redeposited, for reasons unknown at this time, with St. Paul. On September 17, 2001, Zovkic incorporated C.C. Restaurants, Inc. As stated earlier, upon information and belief, Defendant C.C. conducted business as Seasons.

21. Upon information and belief, Zovkic again obtained personal "share secured" loans to fund XO. On or about April 7, 2003, Zovkic received a loan from St. Paul in the amount of $10,000.00 evidenced by account 82165-56. On April 14, 2003, Zovkic incorporated Scene. The very next month, Zovkic received a loan from St. Paul in the amount of $270,000.00

5

evidenced by account 82165-57. Of the $270,000.00, Zovkic received $250,000.00, and upon information and belief, the remaining $20,000.00 was either redeposited with St. Paul or cashed. On or about September 18, 2003, after months of preparation, likely in the form of substantial improvements to the premises, XO opened.

22. Additionally, upon information and belief, Zovkic obtained another personal loan to fund Fortress. On or about June 11, 2009, Zovkic received a loan from St. Paul in the amount of $250,000.00 evidenced by account 80600-58. On December 16, 2009, Zovkic incorporated Zmin. According to the Ohio Division of Liquor Control, Zmin was issued its liquor permits on May 14, 2010. Fortress opened on or about May 2010.

23. After obtaining the above discussed loans Zovkic redirected the loan proceeds to fund business ventures, as St. Paul was not permitted to directly make business loans.

24. Zovkic obtained loans without signing loan applications.

25. St. Paul relied upon Zovkic's misrepresentation that he would repay the monies borrowed to its detriment by funding the above-described loan transactions and was further harmed when Zovkic failed to maintain sufficient collateral in his share accounts to secure the loans.

26. The Liquidating Agent has been damaged as a result of St. Paul's reliance upon Zovkic's misrepresentations and material omissions by having been fraudulently induced to fund loans that Zovkic had no intention of repaying and Zovkic failed to properly secure as required by the terms upon which the loans were issued.

27. Additionally, Zovkic engaged in a scheme whereby he obtained loans from St. Paul and used some or the entirety of the loan proceeds to make payments on outstanding loans

in his own name or the name of one or more of the other Defendants, to give the appearance that all of Zovkic's loans were not in default. This further scheme was required as Zovkic rarely, if ever, made payments toward his loans prior to the Liquidation date.

28. Consistent with Zovkic's disregard for his obligation to make payments towards the loans prior to the Liquidation Date, Zovkic has made no payments on any of the loans at issue since the Liquidation Date. Moreover, Zovkic has ignored or avoided any and all attempts made by the Liquidating Agent to contact Zovkic concerning the loans.

29. As a result of Zovkic's fraud, the Liquidating Agent has and continues to be damaged in an amount in excess of $2,061,778.52, plus interest as deemed just and appropriate by the Court.

### Count 2 - Aiding and Abetting Fraud

30. The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

31. By virtue of their conduct described above, Defendants XO, Fortress, and Seasons substantially assisted Zovkic to fraudulently obtain loan funds, divert and misuse loan funds, and to defraud the Liquidating Agent.

32. The Defendants were aware, at the time such assistance was provided, that their acts and/or omissions played a critical role in the fraud committed against the Liquidating Agent to fraudulently obtain loan funds and thereafter shelter assets acquired with fraudulently obtained loan funds.

33. The acts and omissions of the Defendants, as described in detail above, were knowingly performed and substantially assisted the commission of and the continuation of the fraud against the Liquidating Agent.

34. As a direct result of the aforesaid acts by and attributable to the Defendants, the Liquidating Agent has sustained actual damages in an amount no less than $2,061,778.52 (not including accrued interest), for which it is entitled to be compensated; and further, based on the egregious nature and character of the foregoing fraudulent acts and scheme, the Liquidating Agent is entitled to an award of punitive damages and attorneys' fees.

## **Count 3 – Civil Conspiracy**

35. The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

36. By virtue of their conduct described above, the Defendants substantially assisted each other in their scheme and artifice to fraudulently obtain loan funds, divert and misuse loan funds and to defraud the Liquidating Agent by means of false and fraudulent pretenses, representations, promises, and material omissions.

37. The Defendants acted in concert with each other in order to commit a fraudulent scheme against the Liquidating Agent. Each of the Defendants actively participated in a civil conspiracy with/among themselves, and possibly with other persons that are unknown at this time, the purpose of which was to fraudulently obtain loans from St. Paul. The Defendants acted to further their own economic benefit and gain when purposefully obtaining loans, which they had no intention of ever repaying, and, moreover, despite terms upon which the loans were

made, the Defendants failed to maintain sufficient collateral in Defendant Zovkic's share account.

38. The Defendants' conspiracy was knowing, malicious and intentional, or in reckless disregard for the rights of the Liquidating Agent.

39. As a direct result of the aforesaid acts by and attributable to all Defendants, the Liquidating Agent has sustained actual damages in an amount no less than $2,061,778.52 (not including all accrued interest), for which it is entitled to be compensated; and further, based on the egregious nature and character of the foregoing fraudulent acts and scheme, the Liquidating Agent is entitled to an award of punitive damages and its attorneys' fees.

## Count 4 – Conversion

40. The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

41. By engaging in the conduct set forth in the preceding allegations, the Defendants unlawfully and maliciously converted the loan funds obtained from St. Paul without any intention of ever repaying the same and with the intent of permanently depriving St. Paul of its property rights.

42. At all times relevant to the claims asserted herein, St. Paul lawfully owned and/or had the right to possession of the funds that were obtained by the Defendants through their numerous loan transactions. By operation of law, the Liquidating Agent has succeeded to all rights, title, powers, and interests of St. Paul including, without limitation, its ownership interest in the funds that were unlawfully converted by the Defendants.

9

43. The Defendants converted the St. Paul loan proceeds that they cashed, deposited outside of St. Paul, or wired out—an amount in excess of $1.38 million. This figure does not include loan proceeds that the Defendants used for St. Paul loan payments, such as to curtail accruing interest and otherwise cover up the absence of any actual payments toward the debts.

44. As a result of the Defendants' unlawful conversion of the funds of St. Paul, the Liquidating Agent has sustained a loss in excess of $1.38 million.

45. In addition, the Defendants' actions, as described herein, constitute multiple theft offenses under Ohio law as defined in Ohio Revised Code § 2913.01. Accordingly, as the victim of multiple theft offenses committed by the Defendants, the Liquidating Agent is hereby seeking all appropriate relief available under Ohio Revised Code §§ 2307.60 and 2307.61.

46. Pursuant to Ohio Revised Code § 2307.61(A)(1)(b), the Liquidating Agent is hereby asserting liquidated damages against the Defendants in the amount of three times the value of the funds that were unlawfully converted by the Defendants, namely in excess of $1.38 million, in addition to all other statutory relief provided thereunder.

## Count 5 – Account

## Zovkic Loan Account Number 82165

47. The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

48. On or about June 2, 1998, Zovkic opened a share account at St. Paul that was assigned account number 82165-00.

49. On or about the same date, Zovkic commenced obtaining loans from St. Paul, each of which was reflected in a separate loan account in the books and records maintained by

St. Paul under the name of Zovkic and using Zovkic's member number 82165 (the "Zovkic 82165 Loan Accounts").

50. From on or about June 5, 1998 until the Liquidation Date, Zovkic applied for, obtained and/or benefitted from "share-secured" loans from St. Paul, as fully reflected in the Zovkic 82165 Loan Accounts attached hereto and incorporated herein by reference as <u>Exhibit B</u>.

51. The loans obtained by Zovkic were share-secured, meaning that the funds held in Zovkic's share account (82165-00) were supposed to serve as collateral against any loan obtained by Zovkic from St. Paul. Zovkic failed to maintain sufficient funds in the share account to properly collateralize the loans obtained. On the Liquidation Date, the Zovkic 82165 Loan Accounts reflected loans due and owing of $1,105,356.11 (i.e. $495,007.58 with respect to Zovkic 82165 Loan Account number 82165-52 and $610,348.53 with respect to Zovkic 82165 Loan Account number 82165-57), yet Zovkic's share account 82165-00 had a mere $263.58.

52. Proceeds of the loans obtained by Zovkic and reflected in the Zovkic 82165 Loan Accounts were distributed directly to Zovkic or deposited into accounts then withdrawn by, or applied to or for the benefit of Zovkic or other Defendants.

53. When St. Paul's borrowers, such as Zovkic, did not make payments on loans, St. Paul would "reset" the loans by paying off the past due principal and interest, and then establish a new loan account in the borrower's name equal to the prior principal plus accrued interest. From time to time, when Zovkic's loan accounts were "reset," additional loans were extended to or for the benefit of Zovkic or other Defendants.

54. As of the Liquidation Date, Zovkic had two separate accounts outstanding, namely, Zovkic 82165 Loan Account numbers 82165-52 and 82165-57. Through the above-

described practice of "resetting" the loans and the adding of further extensions of money thereto, the first Zovkic 82165 Loan Account, which originated with an initial loan on September 13, 2001 in the amount of $125,000.00 and evidenced by account number 82165-51, eventually resulted in the balance due and owing as of the Liquidation Date evidenced by Zovkic 82165 Loan Account Number 82165-52. Similarly, the second Zovkic 82165 Loan Account, which originated with an initial loan on April 7, 2003 in the amount of $10,000.00, and evidenced by account number 82165-56, eventually resulted in the balance due and owing as of the Liquidation date evidenced by Zovkic 82165 Loan Account number 82165-57.

55. As of the Liquidation Date, Zovkic had Zovkic 82165 Loan Account Numbers 82165-52 and 82165-57 due and owing with principal balances of $495,007.58 and $610,348.53, respectively. However, because Zovkic did not make payments towards the outstanding loans prior to the Liquidation Date, in addition to the process of "resetting" the loans, Zovkic 82165 Loan Accounts were from time to time allegedly reduced through purported, albeit improper, payments applied from loans standing in the name of apparent unrelated then members at St. Paul. As such, subsequent to the Liquidation Date, the Liquidating Agent reversed apparent improper payments previously applied to Zovkic 82165 Loan Accounts 82165-52 and 82165-57 to arrive at the amount due and owing of $504,185.50 and $667,241.07 respectively.

56. Zovkic has failed to repay amounts due and owing on Zovkic 82165 Loan Account numbers 82165-52 and 82165-57 and is in default of the obligations thereunder.

57. As a result of said default, the entirety of Zovkic 82165 Loan Account numbers 82165-52 and 82165-57 are immediately due and payable.

58. Zovkic has failed and refused to liquidate the balance due and owing. Until paid in full, interest on Zovkic 82165 Loan Account numbers 82165-52 and 82165-57 will continue to accrue on the unpaid principal balances totaling $504,185.50 and $667,241.07, respectively, at such rate as deemed just and appropriate by this Court.

**Count 6 – Account**

**Zovkic Loan Account Number 80600**

59. The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

60. On or about September 20, 2004 Zovkic opened a share account at St. Paul that was assigned account number 80600-00.

61. Prior to September 20, 2004, Zovkic commenced obtaining loans from St. Paul, each of which was reflected in a separate loan account in the books and records maintained by St. Paul under the name of Zovkic and using Zovkic's member number 80600 (the "Zovkic 80600 Loan Accounts").

62. From on or about September 3, 2004 until the Liquidation Date, Zovkic applied for, obtained and/or benefitted from "share-secured" loans from St. Paul, as fully reflected in the Zovkic 80600 Loan Accounts attached hereto and incorporated herein by reference as Exhibit C.

63. The loans obtained by Zovkic were share-secured, meaning that the funds held in Zovkic's share account (80600-00) were supposed to serve as collateral against any loan obtained by Zovkic from St. Paul. Zovkic failed to maintain sufficient funds in the share account to properly collateralize the loans obtained. On the Liquidation Date, the Zovkic 80600 Loan

Accounts reflected a loan due and owing in the amount of $830,254.77, yet Zovkic's share account 80600-00 had a mere $5.62.

64. Proceeds of the loans obtained by Zovkic and reflected in the Zovkic 80600 Loan Accounts were distributed directly to Zovkic or deposited into accounts then withdrawn by, or applied to or for the benefit of Zovkic.

65. Through the previously described system of "resetting" the loans, Zovkic 80600 Loan Accounts, which originated with an initial loan on September 3, 2004 in the amount of $404,000.00 and evidenced by account number 80600-50, were frequently reset with further extensions of money being added thereto, to eventually result in the balance due and owing as of the Liquidation Date, evidenced by Zovkic 80600 Loan Account number 80600-58.

66. As of the Liquidation Date, Zovkic had Zovkic 80600 Loan Account number 80600-58 due and owing with a principal balance of $830,254.77. However, since Zovkic did not make payments towards the outstanding loans prior to the Liquidation Date, in addition to the process of "resetting" the loans, Zovkic 80600 Loan Account was from time to time allegedly reduced through purported, albeit improper, payments applied from loans standing in the name of apparent unrelated then members at St. Paul. As such, subsequent to the Liquidation Date, the Liquidating Agent reversed apparent improper payments previously applied to Zovkic 80600 Loan Accounts to arrive at the amount due and owing of $890,351.95.

67. Zovkic has failed to repay amounts due and owing on Zovkic 80600 Loan Account number 80600-58 and is in default of the obligations thereunder.

68. As a result of said default, the entirety of Zovkic 80600 Loan Account number 80600-58 is immediately due and payable.

69. Zovkic has failed and refused to liquidate the balance due and owing. Until paid in full, interest on Zovkic 80600 Loan Account number 80600-58 will continue to accrue on the unpaid principal balance totaling $890,351.95 at such rate as deemed just and appropriate by this Court.

## Count 7 – Unjust Enrichment

70. The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

71. Defendants have received a benefit from the retention and use of the funds issued by St. Paul reflected in the various accounts, more fully described above, and they continue to receive a benefit by their failure to repay the amounts due and owing.

72. At all times relevant, Defendants had knowledge of the benefit conferred from their retention and/or use of the funds issued by St. Paul.

73. Defendants have been and continue to be unjustly enriched by their retention and use of the funds reflected in their various accounts, totaling $2,061,778.52, plus interest as deemed just and appropriate by the Court.

74. As a result of the Defendants' unjust enrichment, the Liquidating Agent has and continues to be damaged in an amount in excess of $2,061,778.52, plus interest as deemed just and appropriate by the Court.

WHEREFORE, Plaintiff, the National Credit Union Administration Board, acting in its capacity as Liquidating Agent for St. Paul Croatian Federal Credit Union, demands judgment against Defendants in its favor as follows:

1. Counts 1-3: Judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus interest together with such other relief as this Court deems appropriate, just and equitable; and

2. Count 4: Pursuant to Ohio Revised Code § 2307.61(A)(1)(b), the Liquidating Agent seeks judgment against the Defendants in the amount of three times the value of the funds that were unlawfully converted by the Defendants, in addition to all other statutory relief provided thereunder; and

3. Count 5: Judgment against Zovkic, in an amount in excess of $75,000.00, plus interest together with such other relief as this Court deems appropriate, just and equitable; and

4. Count 6: Judgment against Zovkic, in an amount in excess of $75,000.00, plus interest together with such other relief as this Court deems appropriate, just and equitable; and

5. Count 7: Judgment against the Defendants, in an amount in excess of $75,000.00, plus interest together with such other relief as this Court deems appropriate, just and equitable.

Respectfully submitted,

*/s/ Matthew C. Miller*
**MATTHEW C. MILLER (0084977)**
*MMiller@westonhurd.com*
**SAMUEL J. LAURICIA III (0078158)**
*SLauricia@westonhurd.com*
**ROBERT E. GOFF, JR. (0069818)**
*RGoff@westonhurd.com*
**Weston Hurd LLP**
The Tower at Erieview
1301 East 9th Street, Suite 1900
Cleveland, OH 44114-1862
(216) 241-6602 / (216) 621-8369 (fax)
*Counsel for Plaintiff, the National Credit Union Administration Board, acting in its capacity as Liquidating Agent for St. Paul Croatian Federal Credit Union*